IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 1, 2006

## MAURICE PRUITT v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Gibson County**
**No. H 6859      Donald H. Allen, Judge by Designation**

_____

**No. W2005-01919-CCA-R3-PC  - Filed November 30, 2006**

_____

The petitioner, Maurice Pruitt, was convicted of the sale of one-half gram or more of cocaine, a Class B felony, and was sentenced to 18 years in prison. He filed a petition for post-conviction relief, claiming that he received the ineffective assistance of counsel. The trial court dismissed his petition. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Maurice Pruitt.

Paul G. Summers, Attorney General and Reporter; C. Daniel Lins, Assistant Attorney General; Garry G. Brown, District Attorney General; and Elaine Gwinn Todd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner's conviction resulted from an undercover drug buy operation. Testimony at the trial reflected that Charlotte Lumpkin was hired by the Drug Task Force to buy drugs undercover. She and Paris Police Department Sergeant Jacque Bass approached Thomas Boykin, who led them to the house of Brian Pearson, where Boykin said someone could sell them crack cocaine. Sergeant Bass stayed in the car while Lumpkin and Boykin entered the house. Lumpkin returned with $100 worth of crack cocaine. She said she recognized the face and distinctive car of the person who sold the drugs to her but did not know his name. Humboldt Police Department Lieutenant Danny Lewis presented Lumpkin with a photographic lineup, and Lumpkin identified the petitioner as the seller. The petitioner's first trial resulted in a hung jury and mistrial, but he was found guilty after a second trial. This court affirmed the petitioner's conviction on direct appeal. State v. Maurice Pruitt, No. W2002-01905-CCA-R3-CD, Gibson County (Tenn. Crim. App. July 8, 2003).

The only witness to testify at the post-conviction hearing was the petitioner's trial counsel. Counsel testified that he used all eight of his peremptory challenges during the jury voir dire and that he dismissed four prospective jurors upon the petitioner's suggestions. He provided an overview of the facts of the case and the state's key witnesses. He did not remember exactly how much cocaine Lumpkin had purchased, but he said he knew it was over one-half gram. He said the parties stipulated during the second trial that the cocaine was over one-half gram because the state's expert witness, who had testified during the first trial, was either pregnant or had broken her leg by the time of the second trial. He recalled that after the jurors left the courtroom for deliberations, the trial judge entered the jury room to drop off exhibits and other materials. Counsel raised the issue of the impropriety of the judge's actions on direct appeal but was unsuccessful.

Counsel testified that on appeal, he raised the issue of the validity of Lumpkin's identification of the petitioner from photographs. He said that Lumpkin was shown six pictures, one of which had a name on it and three of which were of people she knew. Counsel said he was unsuccessful on this issue on appeal, although he could not remember why.[1] At the first trial, the state did not bring up evidence of the photographic identification. Counsel said he believed the photographic identification was the difference between the first trial's hung jury and the second trial's guilty verdict. When asked what he could have done differently at the second trial to achieve a different result, counsel said he felt that one of the prospective jurors that he dismissed on the request of the petitioner should have been selected for the jury.

Counsel testified that aside from the photographic identification evidence, there was no significant difference between the state's proof at the first and second trials. He said he was well prepared for the second trial, "probably over-prepared." He said he prepared a trial brief, listed witnesses and what he expected their testimony to be, prepared cross-examinations, and looked into "potential law problems that may come up." He said he "should have done the pictures a little better" because they were not introduced at the first trial. He said that without the evidence of the photographic identification, Lumpkin's testimony was weak.

Counsel testified that he cross-examined Boykin, who testified at the trial that he did not see the sale take place. He said that Boykin's testimony raised several impeachment issues, including that he had been released from the Department of Correction soon before he encountered Lumpkin and Sgt. Bass and that he had previously bought drugs from Brian Pearson. Counsel also cross-examined Lumpkin and brought to light her criminal history, the fact that she had failed a drug screen while on probation, and a prior incident in which the petitioner refused to sell drugs to her. He also questioned Lumpkin on the payment she received for participating in undercover drug buys.

Counsel testified that he and the petitioner had a good relationship and that he met with the petitioner in jail more often than he normally met with clients. Counsel testified that he discussed with the petitioner the grounds for a motion for new trial, which were the same issues raised on

---

[1] Our opinion on direct appeal states that the petitioner had waived this issue for failure to make a pretrial motion to suppress or to object properly at trial. Maurice Pruitt, No. W2002-01905-CCA-R3-CD, slip. op. at 4.

appeal. He said that after the petitioner was taken to the Department of Correction, he spoke with the petitioner's girlfriend at least once a week to update her on the status of the case.

The petitioner did not testify at the post-conviction hearing. The state presented no witnesses but did direct the court to the transcripts of the trial and sentencing hearing.

The trial court denied post-conviction relief. The court accredited the testimony of counsel and found that counsel "did all the things necessary to prepare for trial." The court concluded that the petitioner had failed to meet his burden of proving that counsel was ineffective. The petitioner appeals the trial court's judgment denying him post-conviction relief.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id., 104 S. Ct. at 2068. Failure to satisfy either prong results in the denial of relief. Id. at 697, 104 S. Ct. at 2069.

In the present case, the petitioner contends that counsel "did not properly investigate the facts of the case and did not properly represent him." In particular, the petitioner argues that counsel "could have investigated [p]etitioner's case more thoroughly," "could have done a more effective job in his defense by Ms. Lumpkin misidentifying petitioner," did not thoroughly cross-examine Boykin and Lumpkin, and was ineffective in not moving for a mistrial after the judge entered the jury room during deliberations. The state counters that counsel was adequately prepared for trial and that the petitioner failed to prove deficiency or prejudice by clear and convincing evidence.

Relating to the petitioner's first two claims, we note that in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. In asserting that his counsel "could have" done more to investigate his case and prepare his defense, the petitioner essentially asks us to invoke hindsight to speculate as to how his result could have been different. He has not cited to a particular failure in counsel's investigation of his case which he contends amounted to deficient performance. The petitioner also has not explained what more counsel should have done to call into doubt Lumpkin's identification of the petitioner. The trial court found that counsel "was not ineffective simply because the jury chose not to accept his defense of misidentification." We agree.

With regard to the petitioner's claim that counsel did not thoroughly cross-examine state witnesses, the trial court found, upon reviewing the trial transcript, that counsel "brought out matters very damaging to the credibility of both Mr. Boykin and Ms. Lumpkin, including prior drug use and criminal convictions." The trial court also found that counsel "was not ineffective in his cross-examination" of Boykin and Lumpkin. The record, including the trial transcript and counsel's post-conviction testimony, substantiates this finding. Counsel questioned Lumpkin on her payment for working undercover, her prior convictions for forgery and domestic assault, and her failing a drug screen while on probation. Counsel questioned Boykin on the plea deal he made with the state, the fact that he was intoxicated on drugs when he met with Lumpkin and Sgt. Bass, and the fact that he did not see the petitioner sell drugs to Lumpkin. Counsel was not deficient in his cross-examination, and the petitioner is not entitled to relief on this issue.

We also conclude that there is no merit to the petitioner's contention that counsel was ineffective in not calling for a mistrial after the trial judge entered the jury room. The trial court stated that "[t]he jury had not begun deliberating, and nothing more occurred than simply placing the items [jury instructions and exhibits] on the table and exiting the room." The petitioner did not offer proof that any jury tampering or other misconduct occurred or that a motion for mistrial likely would have been successful. The record does not preponderate against the trial court's findings.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court denying the petitioner post-conviction relief.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE